## REYNOLDS v. COCHRAN, DIRECTOR OF DIVISION OF CORRECTIONS.

No. 115.   Argued March 2, 1961.—Decided March 20, 1961.

*Claude Pepper,* acting under appointment by the Court, 363 U. S. 824, argued the cause and filed a brief for petitioner.

*George R. Georgieff,* Assistant Attorney General of Florida, argued the cause for respondent.   With him on the brief was *Richard W. Ervin,* Attorney General.

Mr. Justice Black delivered the opinion of the Court.

In 1956 petitioner was convicted of grand larceny in the Criminal Court of Polk County, Florida, and sentenced to serve two years in prison. In December 1957, with time for good behavior, petitioner was released from prison and discharged from custody as an absolutely free man. Some two months after his release and discharge, the Polk County prosecutor filed an information against petitioner charging that he "has been convicted of two (2) felonies under the laws of the State of Florida, contrary to Section 775.09, Florida Statutes, 1957 [1] . . . and against the peace and dignity of the State of Florida." The two convictions referred to were the 1956 conviction for grand larceny and a 1934 conviction for robbery for which petitioner had also completely served his sentence. Upon the filing of this information, petitioner was promptly arrested, arraigned and, according to the judgment of the trial court, "did then and there freely and voluntarily plead guilty to the Information filed." The court then proceeded to find petitioner "guilty of the offense of Second Offender" and ordered that for "said offense, [he] be confined in the State Prison of Florida at hard labor for a term of Ten (10) Years." [2] Petitioner later brought this

[1] "A person who, after having been convicted within this state of a felony or an attempt to commit a felony, or under the laws of any other state, government or country, of a crime which, if committed within this state would be a felony, commits any felony within this state is punishable upon conviction of such second offense as follows: If the subsequent felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then such person must be sentenced to imprisonment for a term no less than the longest term nor more than twice the longest term prescribed upon a first conviction. . . ." Fla. Stat., 1957, § 775.09.

[2] The theory used by the State in its proceedings against petitioner, as disclosed by the quoted recitals of the information and judgment, seems to be completely at variance with that upon which multiple-

original petition for habeas corpus in the Supreme Court of Florida challenging his confinement under this judgment on the ground that it was not authorized by the Florida second-offender statute and that it violated both the State and the Federal Constitutions in several different respects. Despite the fact that none of the charges made by petitioner were denied by the State, the Florida court dismissed his petition without a hearing.[3] We granted certiorari to consider the correctness of this peremptory denial of the petition in view of the serious nature of the charges made.[4]

Since it is conceded by the State that the federal questions presented here were properly raised and passed on below, and since it is clear that for the purposes of this proceeding the facts set forth by petitioner must be accepted as true,[5] we go directly to the charges made in

---

offender proceedings are normally based. For normally the punishment provided for in a multiple-offender statute is viewed as increased punishment for the last offense in the sequence. Here, on the other hand, the theory seems to have been that petitioner, by virtue of his convictions for two previous offenses, has committed a third and entirely separate offense—to quote the judgment, "the offense of Second Offender." Because of the disposition we make of this case on other grounds, however, we need not reach the questions posed as to the constitutionality of confinement based upon such a theory. In any event, prior opinions of the Supreme Court of Florida indicate that there might be room for considerable doubt whether § 775.09 authorizes confinement on such a theory. See *Cross* v. *State*, 96 Fla. 768, 119 So. 380; *Washington* v. *Mayo*, 91 So. 2d 621.

[3] The Supreme Court of Florida issued no opinion, the case being disposed of with the following order: "The above-named petitioner has filed a petition for writ of habeas corpus to be issued to the respondent in the above entitled cause, and upon consideration thereof, it is ordered that said petition be and the same is hereby denied."

[4] 363 U. S. 801.

[5] *Cash* v. *Culver*, 358 U. S. 633, 634; *Hawk* v. *Olson*, 326 U. S. 271, 273.

the petition. Those charges were clearly stated by petitioner himself in the following excerpt from his rather crudely drawn application for habeas corpus:

"Your petitioner would show this Honorable Court that at the time of his arrest he was living in Valusia County, DeLand Florida, that he was arrested without a warrant, that he was arrested on strength of a pick up order from Sheriff Office, Bartow, Polk County, Florida, that the arresting officer, a deputy sheriff of Volusia County did not know why he was arresting your petitioner and did not have a warrant to make a legal arrest, further that your petitioner was taken against his will across five (5) county lines. The said county lines being Volusia, Seminole, Orange, Osceala, into Polk County all of State of Florida, without his knowing why he was arrested or the arresting officer knowing why or what charge he was making arrest for; Your petitioner, was taken across the afore said counties by the arresting officer, a deputy sheriff of Volusia County, Florida.

"Your petitioner contends that once he was in the clutches of the Criminal Court of Record in and for Polk County Florida; he was a convicted person before he was ever tried.

"To support the above statement your petitioner would show that he was forced to go before the court against his will; that once before the court your petitioner informed the court that he then had legal counsel on the way to represent him in what ever charge may be; a better description of afore said known by Mrs. Sadie M. Bradley, 317 West Minncasata Avenue, DeLand Volusia County, Florida, and, D. C. Laird; attorney at Law, Lakeland Polk Florida. That petitioner had been arrested on the 18th day of February 1958 in Valusia County, and

his attorney was to arrive this morning this date being the 20th day of February 1958, that after being so informed 'the trial court so stated to your petitioner 'you do not need counsel in this case.' Counsel would not be of any assistance you your petitioner, 'No point in calling a Doctor to a man already dead.'

"The trial court then proceeded to read off two (2) convictions from your petitioners record and then asked, You are guilty of these two convictions, are you not? Petitioner saying yes your Honor, but the court, I find, you guilty of being a 'second offender' and sentence you Stephen Franklin Reynolds to ten (10) years in State Prison . . . ."

On the basis of these facts, petitioner contends, among other things, that his confinement is not authorized by the Florida second-offender statute because he had already served the sentences imposed upon each of his prior convictions,[6] and that such confinement violates the state and federal constitutional prohibitions against ex post facto laws and against double jeopardy. It would, of course, be entirely inappropriate under the circumstances of this case for this Court to consider the

[6] Section 775.09, set forth in n. 1, supra, is supplemented by a provision which, on its face at least, appears to condone imposition of second-offender penalties even at such a late date: "If at any time after sentence or conviction it shall appear that a person convicted of a felony has previously been convicted of crimes as set forth either in § 775.09 or § 775.10 the prosecuting attorney of the county in which such conviction was had, shall file an information accusing said person of such previous convictions, whereupon the court in which such conviction was had shall cause said person, whether confined in prison or otherwise, to be brought before it and shall inform him of the allegations contained in such information and of his right to be tried as to the truth thereof, according to law, and shall require such offender to say whether he is the same person as charged in such information or not." Fla. Stat., 1957, § 775.11. (Emphasis supplied.)

questions posed under state law. Nor do we find it neces-
sary to consider these particular questions raised under
the Federal Constitution beyond the observation that
they certainly cannot fairly be characterized as frivolous.[7]
For we think it clear that this case must be reversed for
a hearing in order to afford petitioner an opportunity to
prove his allegations with regard to another constitu-
tional claim—that he was deprived of due process by the
refusal of the trial judge to grant his motion for a con-
tinuance in order that he might have the assistance of
the counsel he had retained in the proceeding against him.[8]

In *Chandler* v. *Fretag*,[9] we made it emphatically clear
that a person proceeded against as a multiple offender has
a constitutional right to the assistance of his own counsel
in that proceeding. Under the facts of this case, as
alleged in the petition filed before the Florida Supreme
Court, the decision in *Chandler* is squarely in point and
controlling. Under those facts, the statement of this
Court in *Powell* v. *Alabama*,[10] which provided the basis
of our holding in *Chandler*,[11] is wholly applicable: "If in
any case, civil or criminal, a state or federal court were
arbitrarily to refuse to hear a party by counsel, employed
by and appearing for him, it reasonably may not be

---

[7] The problem presented by these questions is rather dramatically
stated by petitioner himself in his petition for habeas corpus: "In
the instant case how can your petitioner know when in his life he
is no longer subject to have his liberty translated to imprisonment,
even after expiration of the present sentence, can he again be im-
prisoned without committing another crime as in the instant case??
Surely this Honorable Court will not condone this practice . . . ."

[8] As in *Chandler* v. *Fretag,* n. 9, *infra,* the petitioner here also
alleged a denial of due process in that he was not given pretrial notice
of the charge against him. But as in *Chandler,* we find it unnecessary
to pass upon this contention. See 348 U. S. 3, 5–6, n. 4.

[9] 348 U. S. 3.

[10] 287 U. S. 45, 69.

[11] 348 U. S., at 9–10.

doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense."

The State seeks to avoid the application of the holding in *Chandler* on the basis of a contention that even if it was error for the trial judge to deny petitioner's motion for a continuance, that error was harmless under the facts of this case. The argument offered in support of this contention is that since petitioner admitted the only fact at issue in the proceeding—that he had been convicted of a previous felony in 1934 as charged in the information—a lawyer would have been of no use to him. We find this argument totally inadequate to meet the decision in *Chandler*. Even assuming, which we do not, that the deprivation to an accused of the assistance of counsel when that counsel has been privately employed could ever be termed "harmless error," [12] it is clear that such deprivation was not harmless under the facts as presented in this case. In the first place, petitioner asked for a continuance to enable him to consult with counsel before he admitted the truth of the charge of prior felony conviction. Thus, if petitioner had been allowed the assistance of his counsel when he first asked for it, we cannot know that counsel could not have found defects in the 1934 conviction that would have precluded its admission in a multiple-offender proceeding.[13]

Secondly, and perhaps even more importantly, the State's contention that this factual issue was the only

---

[12] It is significant that in *Chandler* we did not require any showing that the defendant there would have derived any particular benefit from the assistance of counsel.

[13] The proof of prior convictions in a second-offender proceeding may raise difficult evidentiary problems. See, *e. g.*, *Shargaa* v. *State*, 102 So. 2d 809. Moreover, it can be presumed that if an accused second offender were able to make a successful collateral attack upon his first conviction, § 775.09 would not be applied. Cf. *Fields* v. *State*, 85 So. 2d 609.

issue in the proceeding seems to constitute an oversimplification of the matter. For, in addition to the constitutional issues mentioned above, able counsel appointed to represent petitioner in this Court has also pointed out that the proceeding involved a difficult question of statutory construction under Florida law. Counsel has pointed out, for example, that the Florida Supreme Court has never had occasion to pass upon the question whether the second-offender statute may be applied to reimprison a person who has completely satisfied the sentence imposed upon his second conviction and has been discharged from custody. In one case in which that question was argued, the Florida court found that it was not properly presented by the facts of the case before it and then went on to say: "On this question there is a difference of opinion among the members of the Court but, as it is not ripe for determination under the record here, no useful purpose could be served by discussing it." [14] Moreover, another decision of that court has indicated that the statute permitting the filing of an information against a second offender "at any time" [15] would not necessarily be interpreted so mechanically as to allow the second-offender statute to hang over a defendant's head to the end of his natural life. [16]

We of course express no opinion as to how this question of statutory construction should eventually be decided by the Florida courts. But its mere existence dramatically illustrates that even in the most routine-appearing proceedings the assistance of able counsel may be of

---

[14] *Milan* v. *State*, 102 So. 2d 595, 596.

[15] See n. 6, *supra*.

[16] In *Ard* v. *State*, 91 So. 2d 166, the Florida Supreme Court held that the second-offender statute did not apply to a person who had concededly committed two felonies but who had been on probation for five years between the date of his conviction of the second felony and the filing of the second-offender information.

inestimable value. Plainly, such assistance might have been of great value to petitioner here. The allegations of his petition for habeas corpus indicated, if true, that he had been denied the assistance of counsel he had retained. He is entitled to a hearing to establish the truth of those allegations. The case must therefore be and is reversed and remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*